IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Edward Jamele Windham, #300934, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Investigator Mark Graham, Florence )<br>County Sheriff's Department; Captain )<br>Todd Tucker, Florence County )<br>Sheriff's Department; Sheriff Kenny Boone,)<br>Florence County Sheriff's Department; and )<br>John Walsh, Television Reporter-America's )<br>Most Wanted, )<br>)<br>)<br>Defendants. )<br>_____) | C.A. No.: 9:08-cv-1935-PMD-GCK<br><br>**<u>ORDER</u>** |

      This matter is before the Court upon the recommendation of United States Magistrate Judge George C. Kosko that Plaintiff Edward J. Windham's ("Plaintiff" or "Windham") Complaint alleging deprivation of civil rights in violation of 42 U.S.C. § 1983 against Defendants be summarily dismissed without prejudice. The record contains the report and recommendation (the "R&R") made in accordance with 28 U.S.C. §636(b)(1)(B). Plaintiff filed a timely objection to the R&R and an Amended Complaint on June 3, 2008.

## BACKGROUND

      Plaintiff, who is proceeding *pro se*, is a pre-trial detainee arrested and booked in Florence County, South Carolina on charges of murder, possession of a weapon during a violent crime, and possession of a pistol by a convicted felon. Additionally, Plaintiff is facing a pending probation violation charge and one outstanding bench warrant from Family Court as well as two outstanding

bench warrants from a magistrate/city recorder.

The gravamen of Plaintiff's Amended Complaint is that Defendants engaged in "police misconduct" by withholding evidence that allegedly would exonerate Plaintiff of the homicide charge against him. Investigator Mark Graham is employed with the Florence County Sheriff's Office, as is Captain Todd Tucker. Sheriff Kenny Boone, Florence County Sheriff, supervises both Graham and Tucker. Plaintiff alleges in his Amended Complaint that Graham refused to include evidence in the investigation's file in the form of a firearm that was fired at Plaintiff's house eight times and registered to a Jerry Nettler Allen, Jr., purported to be an eyewitness who could testify that other individuals were at the scene of the murder. Plaintiff also alleges that he "ha[s] four other eyewitnesses" but that Graham and Tucker will not accept their statements. (Am. Compl. at 4.) Other than creating some degree of reasonable doubt, it is unclear from Plaintiff's Complaint or Amended Complaint what this evidence would tend to prove exactly or how specifically it might be exculpatory. This exclusion, according to Plaintiff, is at least in part what led to his story being reported on *America's Most Wanted*, a syndicated television program. Plaintiff alleges that this report as well as reports in newspaper articles have defamed his name and misrepresented the facts of his case to the general public.[1]

Based on these events, Plaintiff alleges that Graham and Tucker, and as their supervisor,

---

[1] Plaintiff's original Complaint listed John Walsh, the host of *America's Most Wanted*, as a Defendant. The Magistrate Judge's R&R, however, noted that the claims against Walsh, who is a private individual, were subject to summary dismissal. Though acknowledging that private individuals may act under color of state law, as required for a cause of action under § 1983, the Magistrate Judge determined that Walsh's reporting of Plaintiff's case on his program did not represent "'a sufficiently close nexus between the State and the challenged action . . . so that the action of the latter may be fairly treated as that of the State itself.'" (R&R at 8 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974).) Plaintiff did not object to the summary dismissal of the claims against Walsh, and Plaintiff dropped Walsh as a defendant in Plaintiff's Amended Complaint. Accordingly, this Court is satisfied that the R&R bears "no clear error on the face of the record," *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and adopts this portion of the R&R.

Sheriff Boone, have deprived Plaintiff of his liberty without due process in violation of 42 U.S.C. § 1983.[2] Plaintiff bases his cause of action on the allegation that each Defendant violated "the scope of employee's official duty," and are otherwise guilty of "police negligence, abuse of authority, obstruction of justice, malicious prosecution, misrepresentation, criminal contempt, and violation of the canon of ethics." (Am. Compl. at 3.) Plaintiff seeks money damages in the amount of $1.2 million from each party plus $500,000 (totaling $4.1 million) for "loss of wages, incarceration, discrimination, and violation of the Brady Law," (*id*. at 5), as well as what amounts to prospective injunctive relief.

Magistrate Judge Kosko's R&R recommends that the claims against each Defendant be dismissed without prejudice for a number of reasons. First, Magistrate Judge Kosko notes that Plaintiff has not pursued a remedy for his cause of action in state court and, "[a]bsent extraordinary circumstances, federal courts are not authorized to interfere with a State's pending criminal proceedings." (R&R at 3.) The R&R indicates Plaintiff should first seek relief during the pendency of the charges against him in state court or alternatively seek post-conviction relief in state court and then file an appeal in the form of a petition for writ of certiorari pending a disfavored outcome. Additionally, Magistrate Judge Kosko notes that defamation is not actionable under § 1983. (*See id.* at 6.) The R&R concludes by stating that Eleventh Amendment immunity protects Sheriff Boone and his deputies "for any action taken in their official capacities." (*Id*. at 9.)

For his part, Plaintiff objects specifically to the R&R's treatment of his claim, noting that

---

[2] The Magistrate Judge has construed the allegations presented in Plaintiff's Complaint to be a § 1983 claim. Section 1983 states in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. §1983 (1996).

defamation is but one of the claims he has against the Defendants, including negligence, police misconduct, abuse of authority, and others. (Objections at 1.) Plaintiff also objects to the R&R's application of Eleventh Amendment immunity. (*Id*. at 2.)

## STANDARD OF REVIEW

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636(b)(1). After a review of the entire record, the R&R, Plaintiff's Objections, and Plaintiff's Complaints (initial and as amended), the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the Court adopts the R&R and fully incorporates it into this Order.

## DISCUSSION

A.    Claims Against Sheriff and Sheriff's Deputies in their Official Capacity

The Eleventh Amendment of the Constitution[3] prohibits a State from being hailed into federal court by its citizens without its consent. *See*, *e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) ("While the Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."). Congress, however, has the authority to abrogate the States' Eleventh Amendment immunity by exercising its power under Section 5 of the Fourteenth Amendment, which grants Congress power to enforce the provisions of

---

[3] "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

-4-

the Amendment by appropriate legislation. U.S. CONST. amend. XIV, § 5. "'The prohibitions of the Fourteenth Amendment are directed to the States, and they are to a degree restrictions of State power. It is these which Congress is empowered to enforce, and to enforce against State action . . . is no invasion of State sovereignty.'" *Fitzpatrick v. Bitzer*, 427 U.S. 445, 454 (1976) (quoting *Ex parte State of Virginia*, 100 U.S. 339, 346 (1880)). The Court in *Fitzpatrick* concluded that "the Eleventh Amendment, and the principle of state sovereignty which it embodies, . . . are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment." *Id.* at 456.

However, Congress' intent to abrogate States' immunity must be unequivocally stated in the plain language of the statute under which suit is being brought, and Congress' action must be pursuant to a valid exercise of its power. *See Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 635 (1999); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996). A State may also waive its immunity and consent to suit in federal court. The courts, being reluctant to find such waiver, however, will do so only "where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.'" *Edelman*, 415 U.S. at 673 (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)).

The Supreme Court has determined definitively that Congress did not intend to abrogate States' immunity with regard to § 1983. In *Quern v. Jordan*, 440 U.S. 332 (1979), the Court reaffirmed its holding in *Edelman* that § 1983 does not abrogate the States' Eleventh Amendment immunity, *Quern*, 440 U.S. at 341, and that the language indicating such in *Edelman* was not "patent dicta" as described by Justice Brennan. *Id.* at 341 n.12. In *Quern*, the respondent argued that the Court's holding in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), decided the previous year, nullified the *Edelman* holding with respect to § 1983, *Quern*, 440

U.S. at 338, because it had redefined "persons"against whom suit could be brought under § 1983 to include cities and other municipal organizations. *Id.* at 339 n.7. After an exhaustive analysis of the legislative history of § 1 of the Civil Rights Act of 1871, the precursor to § 1983, the Court, in rejecting respondent's argument, concluded:

> [N]either logic, the circumstances surrounding the adoption of the Fourteenth Amendment, nor the legislative history of the 1871 Act compels, or even warrants . . . the conclusion that Congress intended by the general language of the Act to overturn the constitutionally guaranteed immunity of the several States . . . . By contrast, § 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States.

*Id.* at 342-45.

This conclusion was reiterated by the Court in *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). In *Will*, the Court recognized that Congress had granted the States safe harbor from liability by declining to extend the federal forum to civil rights claims against States, despite the fact the principal purpose behind § 1983 was to provide a federal forum for civil rights plaintiffs. *Id.* at 66. The Court held that *Monell*'s redefinition of "person" in § 1983 to include cities and municipalities did not extend to States. *Id.* at 69. The Court also rejected Justice Brennan's contention that the Dictionary Act of 1871's use of "person" to mean "bodies politic and corporate" was understood to include States for the purposes of § 1983 suits. *Id.* Despite recognizing that § 1983 is "directed against state action - action 'under color of' state law,'" the Court determined that § 1983 "does not suggest that the State itself was a person that Congress intended to be subject to liability." *Id.* at 68. Instead, the Court found "nothing substantial in the legislative history that lead us to believe that Congress intended that the word 'person' in § 1983 included the States of the Union." *Id.* at 69.

Furthermore, South Carolina has not waived its immunity in federal court. The South Carolina Tort Claims Act ("SCTCA"), which is "the exclusive remedy for any tort committed by an employee of a governmental entity," has reserved the State's right of immunity in federal court. *See* S.C. CODE § 15-78-20 (a) & (e) ("Nothing in this chapter is [to be] construed as a waiver of the state's or political subdivision's immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States . . . ."). Plaintiff thus may not bring this § 1983 claim against the State of South Carolina in federal court.

### *i.     Money Damages*

Immunity in federal court has also been extended to state officials sued in their official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71 (citations omitted). Thus, the Supreme Court has held "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* Where a private party seeks to recover money damages that would necessarily be paid from state coffers, the Eleventh Amendment would bar such recovery in federal court. *Edelman*, 415 U.S. at 663. Furthermore, even where individual officials are named as defendants, the Eleventh Amendment would protect States from liability: "[W]hen the action is in essence one for the recovery of money from the state, the state is the real substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Id*. (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)).

In South Carolina, it is well-settled that, "a sheriff's office is an agency of, and a sheriff 'dominated by,' the state, such that a suit against the sheriff in his official capacity is a suit against the State." *Carroll v. Greenville County Sheriff's Dep't*, 871 F.Supp. 844, 846 (D.S.C. 1994); *see*

*also Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996); *McCall v. Williams*, 52 F. Supp. 2d 611, 615 (D.S.C. 1999). This status has been extended to deputy sheriffs as well. *See McCall*, 52 F. Supp. 2d at 615.

As noted above, South Carolina has not waived its Eleventh Amendment immunity protection. Accordingly, Plaintiff's request for relief of money damages against Graham, Tucker, and Boone in their official capacity is barred as a matter of law in federal court under the Eleventh Amendment of the Constitution of the United States.

    *ii.     Injunctive Relief*

However, this does not render § 1983 meaningless insofar as it affords plaintiffs remedies against States. *Quern*, 440 U.S. at 345. In *Edelman*, the Court reaffirmed its opinion in *Ex parte Young*, 209 U.S. 123 (1908) which held that "the Eleventh Amendment did not bar an action in the federal courts seeking to enjoin" a public official sued in his official capacity. *Edelman*, 415 U.S. at 664. The Court clarified that for actions brought under § 1983, "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury." *Id.* at 677 (citing *Ford Motor Co.*, 323 U.S. 459). Rather, officials would be considered "persons" for the purposes of § 1983 and could be held liable for injunctive relief because "official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n.10 (citations omitted). The distinction between remedies at law and remedies at equity for the purposes of civil rights litigation "is commonplace in sovereign immunity doctrine and would not have been foreign to the 19th-century Congress that enacted §1983." *Id.* (internal quotations and citations omitted).

Thus, it is permissible under the *Ex parte Young* exception to Eleventh Amendment

immunity for federal courts to "enjoin state officials to conform their future conduct to the requirements of the federal law." *Quern*, 440 U.S. at 337 (citing *Edelman*, 415 U.S. at 667-68). It is important to note, as the Court in *Edelman* did, the distinction between *prospective* injunctive relief, which would force a state official into compliance with federal law in the future, and *retrospective* relief. Quoting the Second Circuit, the Court observed:

> It is one thing to tell the Commissioner of Social Services that he must comply with the federal standards for the future if the state is to have the benefit of federal funds in the programs he administers. It is quite another thing to order the Commissioner to use state funds to make reparation for the past. The latter would appear to us to fall afoul of the Eleventh Amendment if that basic constitutional provision is to be conceived of as having any present force.

*Edelman*, 415 U.S. at 665 (quoting *Rothstein v. Wyman*, 467 F.2d 226, 236-37 (2d Cir. 1972)). Furthermore, the *Ex parte Young* doctrine is limited in that federal courts lack jurisdiction "to redress past wrongs rather than ongoing violations." *Frazier v. Simmons*, 254 F.3d 1247, 1253 n.2 (10th Cir. 2001) (citing *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1188-89 (10th Cir. 1998)).

In determining whether Plaintiff's suit may proceed under the *Ex parte Young* doctrine, that is, whether Plaintiff may seek prospective injunctive relief in federal court against Graham, Tucker, and Boone, the Court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief characterized as prospective.'" *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)); *see also Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998). Although "the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim," *Verizon,* 535 U.S. at 646, the Court must determine that Plaintiff does in fact allege a violation of federal law before allowing the suit to go forth. *Cf. Coeur d'Alene Tribe of Idaho*, 521 U.S. at 281-82 (stating that "[a]n allegation of an ongoing

-9-

violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction" but holding the respondent's suit was barred by the Eleventh Amendment because the cause of action was the functional equivalent of a suit for quiet title, which carried with it special sovereignty interests not in contravention of federal law); *see also Antrican v. Odom*, 290 F.3d 178, 186 (4th Cir. 2002) (noting that the *Ex Parte Young* exception requires the allegation of an ongoing violation of federal law). Furthermore, the court must satisfy itself, as a threshold consideration, that the plaintiff's complaint has given "indication that [he] might be entitled to injunctive relief for ongoing federal . . . violations by state officials." *Frazier*, 254 F.3d at 1254, 1255 (citation omitted). In *Frazier*, the Tenth Circuit determined that the *Ex parte Young* exception did apply to the plaintiff's case and that suit was not barred by the Eleventh Amendment. *Id.* at 1255. The court considered not only the plaintiff's complaint, which prayed for prospective equitable relief, but also the nature of the harms alleged to determine whether equitable relief would be available as a remedy. *Id.*

In the case at bar, Plaintiff has indeed prayed for prospective injunctive relief in his Amended Complaint. In addition to money damages, which the Court held to be barred by South Carolina's Eleventh Amendment immunity, *see supra* p. 8, Plaintiff also asks for an apology and "for the [C]ourt to make sure that this doesn't happen in the future to other citizens." (Am. Compl. at 5.) The remaining question is whether Plaintiff has alleged that Defendants, as officials of South Carolina, violated federal law and if so whether such violation entitles Plaintiff to injunctive relief.

Plaintiff alleges Defendants committed "police negligence, abuse of authority, obstruction of justice, malicious prosecution, misrepresentation, criminal contempt, and violation of the canon of ethics" while acting within the "scope of [their] official duty" by failing to include evidence

Plaintiff alleges to be exculpatory in the investigative file. (Am. Compl. at 3.)[4] Though Plaintiff attempts to use these buzzwords in order to state discrete claims, this Court has previously held that a complaint is insufficient where it simply expounds a collection of legal buzzwords but fails to make any factual allegations against the defendants. *See Boston v. Stobbe*, No. 9:08-CV-819-PMD-GCK, 2008 WL 2227240 (D.S.C. May 27, 2008) (adopting the Magistrate Judge's R&R that concluded legal "buzzwords" devoid of factual allegations are not sufficient to state a claim). Instead, the Court will consider Plaintiff's § 1983 claim based only on the factual allegations actually made in his Amended Complaint. As noted above, the gravamen of Plaintiff's Amended Complaint is that Defendants deprived him of his liberty without due process of law by failing to include the articles of evidence and statements from eyewitnesses that Plaintiff claims would be exculpatory in Plaintiff's investigation file and thus suppressed evidence either negligently or intentionally. *See Jean v. Collins*, 221 F.3d 656, 659 (4th Cir. 2000) (per curiam) (analyzing the failure of a police officer to disclose exculpatory evidence to the defense resulting in the defendant's conviction as a potential deprivation of liberty without due process of law).

This Court is unaware of any cognizable federal cause of action that would permit Plaintiff to recover simply because he is not satisfied with the investigation of his case. However, in *Pyle v. Kansas*, 317 U.S. 213 (1942), the petitioner, who had been convicted of murder and robbery, sought review of a state court order denying his application for writ of habeas corpus. *Pyle*, 317

---

[4] Although Plaintiff included an allegation of defamation in his initial Complaint, the Magistrate Judge's R&R concluded that "[a]n alleged act of defamation of character or injury to reputation is not actionable under 42 U.S.C. § 1983." (R&R at 6 (citing *Paul v. Davis*, 424 U.S. 693, 697-710 & nn.3-4 (1976).) The R&R also determined that under South Carolina caselaw and the "fair report" doctrine, the contents of governmental records used in media reports could not give rise to liability for slander. (*Id.*) Plaintiff did not object to the R&R's treatment of his defamation allegation specifically, but only highlighted the fact that his claim was not limited to the defamation allegations. (Objections at 1.) Plaintiff also dropped this allegation of defamation from his Amended Complaint. (Am. Compl. at 3.) Accordingly, the Court adopts the Magistrate Judge's recommendation on this point.

U.S. at 213. The Court concluded that allegations that petitioner's imprisonment "resulted from perjured testimony, knowingly used by the State authorities to obtain his conviction, and from the deliberate suppression by those same authorities of evidence favorable to him" sufficiently "charge a deprivation of rights guaranteed by the Federal Constitution." *Id.* at 216 (citing *Mooney v. Holohan*, 294 U.S. 103 (1935)). In *Pyle*, however, the petitioner had been convicted, but Plaintiff herein is awaiting trial.

The Supreme Court has consistently held that the Due Process Clause is violated, thus giving rise to a cognizable § 1983 claim, during the "*deliberate* suppression of evidence favorable to the accused." *Albright v. Oliver*, 510 U.S. 266, 299 (1994) (plurality opinion) (emphasis added); *see also Pyle*, 317 U.S. at 216. Thus Plaintiff has failed to state a claim under § 1983 based on an allegation that the police negligently failed to include the evidence Plaintiff seeks. *See Jean v. Collins*, 221 F.3d 656, 660 (4th Cir. 2000) ("Under *Daniels* [*v. Williams*, 474 U.S. 327 (1986)], . . . police officer negligence or inadvertence in failing to turn over evidence cannot be actionable under § 1983."); *see also Clemmons v. Armontrout*, 477 F.3d 962, 966 (8th Cir. 2007) ("Negligent failure to investigate other leads or suspects does not violate due process."); *Lewinski v. Ristaino*, 448 F.Supp. 690, 696 (D. Mass. 1978) ("[T]here is no authority to indicate that police negligence in investigation, without more, is equivalent to a denial of due process.").

Plaintiff, however, appears to do more than allege mere negligence–he alleges Tucker and Graham are "withholding evidence" and that they refuse to accept statements from Plaintiff's eyewitnesses. (Am. Compl. at 3-4.) Plaintiff relies heavily on *Brady v. Maryland*, 373 U.S. 83 (1963), in his Amended Complaint to assert that any suppression of evidence, deliberate or otherwise, is a deprivation of his civil rights under § 1983. In that case, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due

-12-

process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87.  The petitioner in *Brady* claimed that the prosecutor had violated the petitioner's due process rights at trial when he withheld from the petitioner the confession of the petitioner's co-conspirator in a murder trial, despite the petitioner asking for the statement from the prosecution.  The Court agreed, noting "'a contrivance by a state to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation.'" *Id.* at 86 (quoting *Mooney*, 294 U.S. at 112).  The Court continued, however, girding the justification of its holding in the necessity of a fair *trial*: "The principle of Mooney v. Holohan is not punishment of society for misdeeds of a prosecutor, but avoidance of an unfair trial to the accused.  Society wins not only when the guilty are convicted but when criminal trials are fair. . . ." *Id.* at 87.  The Fourth Circuit has also clarified the reading of *Brady* to only involve an actual criminal trial:

> Under *Brady v. Maryland*, it is only the suppression of "material" exculpatory evidence by the government that violates a defendant's due process rights.  Evidence is "material" only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A "reasonable probability" of a different result is [] shown when the Government's evidentiary suppression "*undermines confidence in the outcome of the trial*."

*Hoke v. Netherland*, 92 F.3d 1350, 1356 (4th Cir. 1996) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (other internal citations omitted) (emphasis included in the original)); *see also United States v. Agurs*, 427 U.S. 97, 103 (1976) (holding that the common thread of the application of the *Brady* rule to three distinct scenarios was that each scenario involved the "discovery, *after trial* of information which had been known to the prosecution but unknown to the defense") (emphasis added). Furthermore, the Fourth Circuit stated in *Jean* that "[t]o hold that the contours of the due process duty applicable to the police must be identical to those of the prosecutor's *Brady* duty would

-13-

thus improperly mandate a one-size-fits-all regime." *Jean,* 221 F.3d at 660.

Thus under *Brady*, the Supreme Court does not require the government to present all the available evidence to the defense during the pretrial phase. *See United States v. Williams*, 504 U.S. 36 (1992) (holding that exculpatory evidence does not need to be presented to the grand jury in order to secure an indictment); *see also Johnson v. Moore*, 164 F.3d 624, at *22 (4th Cir. 1998) (unpublished table decision) ("By definition, a *Brady* claim cannot be reasonably available to a defendant during the course of his trial. A *Brady* claim is an allegation of concealment that can only come to light *after* a trial when the withholding is made known to the defense during post-conviction fact-finding."). The Supreme Court has not recognized a due process requirement for criminal proceedings that includes a standard for the initiation of a criminal prosecution. *Albright*, 510 U.S. at 283 (Kennedy, J., concurring). In *Albright*, the Court offered a plurality opinion affirming the Court of Appeals' dismissal of the petitioner's § 1983 claim, determining that pretrial deprivations of liberty were protected by the Fourth Amendment rather than the Due Process Clause of the Fourteenth Amendment. *Id.* at 274 (plurality opinion). Writing the concurring opinion which addressed the petitioner's § 1983 action predicated on an allegation his due process rights were violated by the "malicious initiation of a baseless criminal prosecution against him," *id.* at 281, Justice Kennedy determined, "[t]he specific provisions of the Bill of Rights neither impose a standard for the initiation of a prosecution . . . nor require a pretrial hearing to weigh evidence according to a given standard." *Id.* at 282 (Kennedy, J., concurring) (citing U.S. CONST. amend. V, VI). Instead, Justice Kennedy noted, a criminal defendant's due process rights, as they pertain to the adequacy of the evidence presented against him, would be sufficiently protected during the defendant's criminal trial:

[B]ecause the Constitution requires a speedy trial but no pretrial hearing on the

-14-

> sufficiency of the charges . . . , any standard governing the initiation of charges would be superfluous in providing protection during the criminal process. If the charges are not proved beyond a reasonable doubt at trial, the charges are dismissed; if the charges are proved beyond a reasonable doubt at trial, any standard applicable to the initiation of charges is irrelevant because it is perforce met.

*Id.* at 283 (Kennedy, J., concurring). Assuming, for the purposes of argument, that the Due Process Clause would recognize a right to freedom from malicious prosecution, Justice Kennedy, citing the Court's precedent in *Paratt v. Taylor*, 451 U.S. 527, 535-44 (1981), concluded that the petitioner did not have a cognizable § 1983 claim because the state afforded him an adequate postdeprivation remedy. *Id.* at 283-84 (Kennedy, J., concurring).

The Fourth Circuit adopted the reasoning embraced by Justice Kennedy and the plurality opinion of *Albright* in *Jean v. Collins*, 221 F.3d 656, a case similar to the one at bar. Hearing the case on remand from the Supreme Court, which had directed the court to apply its recent decision in *Wilson v. Layne*, 526 U.S. 603 (1999), the Fourth Circuit, sitting *en banc*, dismissed the plaintiff's § 1983 claims against the defendant police officers because the plaintiff had failed to claim a violation of constitutional right. *Jean*, 221 F.3d at 663. Although *Wilson* and *Jean* specifically dealt with the sufficiency of a § 1983 claim against the officers in their personal capacities, and thus whether the doctrine of qualified immunity would protect them from suit, the main issue under consideration in *Jean* was "when police officers are liable under § 1983 for allegedly withholding exculpatory evidence from the prosecution and by extension a criminal defendant." *Id.* at 658. Acknowledging that the Fourth Circuit's caselaw regarding the application of the *Brady* rule has indicated a police officer's duty to share exculpatory evidence gathered during the course of an investigation with a prosecutor, the failure of which would give rise to a § 1983 claim, *see id.* at 659 (citing *Goodwin v. Metts*, 885 F.2d 157, 162 (4th Cir. 1989)), the court qualified this duty so that liability would arise only where "'the officer's failure to disclose the exculpatory information

-15-

deprived the § 1983 plaintiffs of their right to a fair *trial*.'" *Id.* (emphasis added) (quoting *Taylor v. Waters*, 81 F.3d 429, 436 n.5 (4th Cir. 1996)). The court in *Jean* further clarified this duty as it would pertain to the failure to provide all exculpatory evidence to the prosecutor and defendant:

> [A]lleged failures to disclose do not implicate constitutional rights where no constitutional deprivation results therefrom . . . . In the absence of a cognizable injury, such as a wrongful criminal conviction, police suppression of evidence might still give rise to claims under state law. *But unless the § 1983 plaintiff can point to a constitutional injury caused by the suppression, no § 1983 remedy will lie.*

*Id.* at 659-60 (emphasis added). As a pretrial detainee, Plaintiff has been unable to demonstrate, and the Court unable to find a reason, why the failure of the Defendants to include the evidence he seeks in his file has violated his constitutional rights at this juncture.

As the Magistrate Judge recognizes in his R&R, Plaintiff may be better positioned for relief after a trial.[5] (*See* R&R at 4.) Plaintiff is a pre-trial detainee suing under § 1983 and accordingly has no cause of action for his claimed injury at this time. The Magistrate Judge, relying principally on *Cinema Blue of Charlotte, Inc. v. Gilchrist*, 887 F.2d 49 (4th Cir. 1989), notes the Fourth Circuit's ruling that "federal district courts should abstain from constitutional challenges to state judicial proceedings, no matter how meritorious, if the federal claims have been or could be presented in an ongoing state judicial proceeding." (R&R at 3.) "[F]ederal constitutional claims are cognizable in both state courts and in federal courts," (*id.* at 4 (citing *Bonner v. Circuit Court of St. Louis*, 526 F.2d 1331, 1336 (8th Cir. 1975) (*en banc*)), allowing Plaintiff to pursue his claims in state court. South Carolina allows for a cause of action to be brought for malicious prosecution under its Tort Claims Act. *See Jackson v. City of Abbeville*, 366 S.C. 662, 623 S.E.2d 656 (Ct. App.

---

[5] To be clear, the Court makes no assessment of the merits of the criminal charges pending against Plaintiff. Not only is it beyond the jurisdiction of this Court to consider, but Plaintiff's guilt or innocence is clearly a matter for a jury to determine after Plaintiff has been afforded his Sixth Amendment right to a trial. The Court only points out that Plaintiff would have a more meritorious § 1983 claim should the evidence he seeks be withheld during his trial, pursuant to both *Brady* and Justice Kennedy's concurring opinion in *Albright*.

2005); *see also Albright*, 510 U.S. at 286 (Kennedy, J., concurring) ("if a State did not provide a tort remedy for malicious prosecution, there would be a force to the argument that malicious initiation of a baseless criminal prosecution infringes an interest protected by the Due Process Clause and enforceable under § 1983"). Because Plaintiff failed to allege a deprivation of his constitutional rights stemming from either his denial of a fair trial or a wrongful conviction, Plaintiff has failed to state a claim that would entitle him to relief and has thus failed to allege a violation of federal law.

Plaintiff has thus not demonstrated that he would be entitled to injunctive relief against Defendants in their official capacities. Based on the allegations set forth in Plaintiff's initial and Amended Complaints, Defendants have not violated federal law by failing to include evidence that may tend to be probative of Plaintiff's innocence in his investigation file. The Supreme Court has definitively stated that a deprivation of liberty that results from negligent conduct is not actionable under § 1983. Even assuming that Defendants deliberately excluded the evidence Plaintiff seeks in his investigation file, it does not appear that Plaintiff can recover at this stage of his pending case, but rather would have to seek relief post-conviction, post-trial, or after charges are no longer pending. Accordingly, Plaintiff has not stated a claim for which prospective injunctive relief is an appropriate remedy. The *Ex parte Young* exception does not apply to Defendants in their official capacities, and suit against them is barred in federal court under the Eleventh Amendment.

It must be remembered that Plaintiff is claiming his constitutional rights have been violated based on what the Defendants have included in their investigatory file at a time when charges remain pending and Plaintiff has not yet been acquitted or convicted. Furthermore, Plaintiff has not alleged there is no evidence or insufficient evidence to charge him; he instead alleges that a more complete investigatory file would include exculpatory evidence as well. Nor is this a case where Plaintiff is unaware of the allegedly exculpatory evidence–he in fact points to specific evidence not contained

in the file, and thus even if this information is not included in the Sheriff's investigatory file, *Brady* does not appear to be at issue as Plaintiff is well aware of this evidence. This is not to say that Plaintiff has no state law claims under this set of facts,[6] nor is it to say that Plaintiff may not later have a cause of action pursuant to § 1983.

B.    Claims Against Defendants in Their Individual Capacities

It is unclear in reading Plaintiff's Amended Complaint whether he sues Defendants in their official capacities, personal capacities, or both. He states, "I, Edward Jamele Windham, state this claim of scope of employee's official duty, police negligence, abuse of authority, obstruction of justice, malicious prosecution, misrepresentation, criminal contempt, and violation of the canon of ethics." (Am. Compl. at 3.) Noting the distinction between personal-capacity and official-capacity suits, the Supreme Court said, "official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent' . . . . Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Because Plaintiff is *pro se*, the court will assume Plaintiff sues all Defendants in an official and personal capacity.

The Eleventh Amendment does not bar suits for damages against state officers sued in their individual capacities. *See Sales v. Grant*, 224 F.3d 293, 297 (4th Cir. 2000) (citing *Graham*, 473 U.S. at 165-66). However, as discussed above, the court concludes that Plaintiff has failed to allege, at least at this time, a constitutional violation. Without an allegation of a constitutional violation, the claims against Defendants, whether they are claims in an official or personal capacity, should

---

[6]This court declines to exercise jurisdiction over Plaintiff's potential state law claims.

-18-

not proceed. *See Hafer*, 502 U.S. at 25 ("Thus, '[o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.'" (quoting *Graham*, 473 U.S. at 166)).

Furthermore, the court also concludes Plaintiff cannot proceed against Sheriff Boone because Plaintiff has not alleged facts sufficient to impose supervisory liability upon Sheriff Boone. Plaintiff states that he names Sheriff Boone as a Defendant "[b]ecause he is responsible for the neglect of duty or misconduct done by his officers." (Am. Compl. at 4.) He also alleges that Boone "has been in lack of supervision [sic] of his employees Captain Todd Tucker and Investigator Mark Graham." (*Id.* at 3.)

> Three elements are necessary in order to establish supervisory liability under § 1983:
>
> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference' to or tacit authorization of the alleged offensive practices'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*McCall v. Williams*, 52 F. Supp. 2d 611, 622 (D.S.C. 1999) (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). As discussed above, Plaintiff has failed to allege that Defendants Graham and Tucker violated his constitutional rights at this juncture. Defendant Boone thus could not possibly have had "actual or constructive knowledge" that the other Defendants were engaging in conduct that posed any risk of constitutional injury to Plaintiff. *See Brownlee v. Dorrity*, No. 2:07-213 DCN RSC, 2007 WL 1075067, at *3 (D.S.C. Apr. 4, 2007) ("Because no constitutional violation by the Defendants has been properly alleged, no supervisory failure to train the officers concerning violation of Plaintiff's constitutional rights can be shown.") The first prong of the supervisory liability test has not been satisfied and the test must necessarily fail. *See McCall*, 52 F. Supp. 2d at

623 n.19.  Boone cannot be held liable merely because he is a supervisor, and Plaintiff has not stated any other theory of liability.  *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (noting the doctrine of respondeat superior has no application in the context of a § 1983 action); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Plaintiff's Amended Complaint is **DISMISSED** without prejudice and without issuance and service of process.

**AND IT IS SO ORDERED**.

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**August 14, 2008**

### NOTICE OF RIGHT TO APPEAL

Plaintiff is hereby notified that he has the right to appeal this Order within thirty (30) days from the date hereof, pursuant to Federal Rules of Appellate Procedure 3 and 4.  *See* Fed. R. App. P. 3-4.